## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BETHANY ANDERSON, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MYERS THE HOME BUYERS OF TAMPA, LLC, a Florida limited liability company<br><br>Defendant. | Case no.<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bethany Anderson ("Plaintiff" or "Anderson") brings this Class Action Complaint and Demand for Jury Trial against Defendant Myers The Home Buyers of Tampa, LLC ("Defendant" or "Myers") to stop it from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers *without their consent*, and to obtain injunctive and monetary relief for all persons injured by the conduct of Myers.  Plaintiff Anderson, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Bethany Anderson is a resident of Tampa, Florida.

2. Defendant Myers is a Florida limited liability company located at 689 Central Avenue, Ste 200-H, St Petersburg, Florida 33701.  Defendant Myers conducts business throughout this District, Florida, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant incorporated and headquartered in this District and because the wrongful conduct giving rise to this case was directed from and/or to this District.

## TCPA BACKGROUND

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be

2

>obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

16. According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Mar. 5, 2020).

17. Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id*.

18. Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

**COMMON ALLEGATIONS**

19. Defendant Myers provides realty services to investors seeking to buy investment properties.

20. Defendant trains and provides its agents the technological tools to market their realty services to investors by attempting to "establish meaningful and lasting relationships with investors and present them with properties."[3]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.ziprecruiter.com/c/Josh-Deshong-Real-Estate/Job/Investment-Real-Estate-Specialist/-in-Dallas,TX?jid=DQb3d33b9ef133e92a5a1a8d8f2bef01bd

4

21.     Defendant Myers provides agents leads and trains them to call and text those leads to market realty services.[4]

22.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

23.     Yet in violation of this rule, Defendant Myers fail to obtain any express written consent prior to prior to providing its agents leads and directing them to send autodialed text messages to cellular telephone numbers such as those of Plaintiff.

24.     In sending the unsolicited text messages at issue, the Defendant's agents used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "Stop," the text messages' commercial and generic content, and that substantively identical texts were sent to multiple recipients, which is consistent with the use of an automatic telephone dialing system to send text messages.

**PLAINTIFF ANDERSON'S ALLEGATIONS**

25.     On March 4, 2020 at 8:49 AM, Plaintiff received an autodialed text message from a Myers agent using phone number 813-544-1776.

26.     Plaintiff replied by questioning who sent the text message and she received a response stating, "Elisa with Myers."

---

[4] *Id.*; https://www.linkedin.com/jobs/view/marketing-manager-at-myers-the-home-buyers-1465173008/



27.     It is believed that Plaintiff received autodialed text messages from Elisa Anderson, a Myers Investment Specialist:



28.     In addition to the autodialed text messages, Plaintiff also received emails from Elisa Anderson and Myers:

---

[6] https://www.linkedin.com/in/elisa-anderson-5a206219a/



29. Plaintiff replied to Elisa stating that she doesn't know who Elisa is. Elisa responded by explaining that Plaintiff is (supposedly) a verified investor and that Elisa was searching through her database trying to determine who she didn't know.

30. Plaintiff asked Elisa which company she works for, but she did not receive an immediate response, so Plaintiff replied that her phone number is on the National Do Not Call registry and that she would be reporting Elisa for violating the DNC. Elisa simply replied "ok" acknowledging Plaintiff's response.



7

31. Despite making it clear that she was not interested, Plaintiff received a second autodialed solicitation text message from the Myers agent Elisa using phone number 813-544-1776 on March 12, 2020 at 3:16 PM to her cell phone:



32. In response, Plaintiff questioned why she was receiving yet another unwanted, unsolicited text message. The Myers agent Elisa replied, "You're off the list."



33. Despite being told that she was off the list, Plaintiff received a third unsolicited, autodialed text message from Myers agent Elisa on March 26, 2020 at 1:51 PM to her cell phone, this time using phone number 813-737-0809:



8

34. Plaintiff believes that the text messages she received on March 4, 2020 at 8:49 AM, March 12, 2020 at 3:16 PM and March 26, 2020 at 1:51 PM on her cell phone were all sent using an autodialer. The text messages are generic in their solicitations and they are all intended to solicit the Plaintiff to purchase an investment property.

35. When sending "Stop" to phone number 813-544-1776, the phone number Defendant used to contact Plaintiff for 2 of the autodialed text messages, an immediate response is generated:



[7]

36. When sending "Stop" to 813-737-0809, the phone number Defendant used to contact Plaintiff on March 26, 2020, an immediate response is generated:



[8]

---

[7] Based on an investigation conducted by Plaintiff's attorneys on March 22, 2020.
[8] Based on an investigation conducted by Plaintiff's attorneys on March 26, 2020.

37. Plaintiff does not have a relationship with Defendant Myers and has never consented to calls from Myers' agents. Simply put, Myers did not obtain Plaintiff's prior express written consent to send any solicitation text messages to her using an autodialer.

38. The unauthorized text messages from the Defendant harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Anderson's use and enjoyment of her cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

39. Seeking redress for these injuries, Anderson, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular phone numbers.

## CLASS ALLEGATIONS

40. Plaintiff Anderson brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) one or more Myers agents texted, (2) to the person's cellular telephone, (3) using dialing equipment substantially similar to the dialing equipment used to text Plaintiff, and (4) for whom Defendant Myers claims (a) it obtained prior express written consent in the same manner as Defendant Myers claims it supposedly obtained prior express written consent to text Plaintiff, or (b) it did not obtain prior express written consent.
>
> **Autodialed Stop Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) one or more Myers agents texted, (2) to the person's cellular telephone, (3) using dialing equipment substantially similar to the dialing equipment used to text Plaintiff, and (4) after the person informed Defendant Myers that s/he no longer wished to receive text messages from Myers.

41. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant's, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against either Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

42. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a) whether Myers agents sent text messages to Plaintiff and member of the Autodialed No Consent Class using an autodialer;
>
> (b) whether Myers agents sent these texts without prior express written consent;
>
> (c) whether Myers agents continued to send text messages to Plaintiff and other consumers after they requested that the texts stop;
>
> (d) whether Myers' is liable for its agents' TCPA violations; and
>
> (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

44. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and neither Defendant has

11

defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

45.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Anderson and the Autodialed No Consent Class)

46.     Plaintiff repeats and realleges paragraphs 1 through 45 of this Complaint and incorporates them by reference herein.

47.     Myers agents sent unwanted solicitation text messages to Plaintiff and the other members of the Autodialed No Consent Class, at Myers' direction, using equipment that, upon

information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

48. These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class.

49. Defendant Myers has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Stop Class)**

50. Plaintiff repeats and realleges paragraphs 1 through 45 of this Complaint and incorporates them by reference.

51. Defendant Myers sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class, at Myers' direction, after being told to stop texting.

52. These solicitation text messages were sent *en masse*.

53. Defendant Myers has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Anderson, individually and on behalf of the Classes, prays for the following relief:

    a. An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

    b.  An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes, and costs;

    c.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

    d.  An injunction requiring the Defendant to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

    e.  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**BETHANY ANDERSON**, individually and on behalf of those similarly situated individuals

Dated: April 2, 2020

*/s/ Stefan Coleman*
Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman* (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*Trial Counsel